## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CORNELIUS JOHNSON and JAMES STRICKLAND, individually and on behalf of those similarly situated, | Case No. 1:22-CV-1852-MHC |
| | Jury Trial Demanded |
| | Collective Action |
| vs. | |
| LAZER SPOT, INC., a Georgia Corporation. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION AND FACILITATE NOTICE TO POTENTIAL CLASS MEMBERS

Pursuant to the Federal and Local Rules of Civil Procedure and 29 U.S.C. § 216(b), Plaintiffs, CORNELIUS JOHNSON and JAMES STRICKLAND, individually, and on behalf of all others similarly situated, respectfully requests the entry of an Order permitting, under court supervision, notice to **"All hourly paid yard spotter employees who worked for Defendant in the state of Georgia in the past three years"** (hereinafter "Yard Spotters").[1] Due to Defendant's company-wide policies and procedures as applied to Georgia Yard Spotters—whereby they

---

[1] Plaintiff's proposed Class Notice and Consent to Become an Opt-In Plaintiff are attached hereto as **Exhibit A** and **B,** respectively.

pay all of the Yard Spotters straight time for all overtime hours worked each week until Defendant began reclassifying the Yard Spotter positions as non-exempt at various locations throughout Georgia—Plaintiffs and the Putative Class Members have been, and continue to be, deprived of overtime wages for all overtime hours worked.[2] Although Defendant contends that its Yard Spotters were exempt from overtime pay (notwithstanding its reclassification of the position at numerous yards to non-exempt), Defendant cannot realistically argue it did not treat its Yard Spotters in a similar manner and that these employees are subject to the same pay practice, warranting conditional certification.

## **MEMORANDUM OF LAW**

### I. **RELEVANT FACTUAL BACKGROUND**

#### A.    Defendant's Operations Span Nationwide, Including Georgia.

According to its corporate website, Defendant is a "yard management" provider with numerous sites throughout Georgia and the United States. *See* www.lazerlogistics.com, and D.E. 18, ¶ 4. As described on their website, "yard spotting is the core of our business, our trained drivers and specialized yard spotting equipment manage the movements of loaded and empty trailers within customer

---

[2] To date, seven (7) Yard Spotters have opted into this matter, including the named-Plaintiffs. *See* D.E.s 19-21.

yards, offsite yards, and campuses." *See* www.lazerlogistics.com/whatwedo; and D.E. 18, ¶ 4. According to its website, Defendant has thirty (30) locations within the state of Georgia. *See* www.lazerlogistics.com/locations. Plaintiffs and the putative class here are the Yard Spotter[3] employees in Georgia who provide those services to Defendant's customers. *See* Declarations of Antonio Cooper, Cornelius Johnson, Radeem Silas, Roosevelt Smith, and James Strickland, attached as Composite **Exhibit C**.

> B.   <u>Plaintiffs and the Putative Class were Paid Under the Same Illegal Scheme Whereby They Were Paid Straight Time (Their Regular Hourly Rates) for Overtime Hours Worked.</u>

Defendant unquestionably maintained a common practice and policy applicable to Plaintiffs and other Georgia Yard Spotters under which it previously uniformly classified these workers as overtime exempt under the FLSA. *See* D.E. 18, Fourth Defense (Motor Carrier exemption). As a result, Defendant only paid Plaintiffs and other Georgia Yard Spotters their regular rate for all overtime hours worked (i.e., "straight time").[4] Defendant has begun to reclassify some yard

---

[3] Yard Spotters are also referred to as Yard Hostlers, Yard Jockeys, or Yard Drivers. All of these titles, however, were the same job and had the same duties. *See* Cooper Decl. at ¶ 5; Johnson Decl. at ¶ 5; Silas Decl. at ¶ 6; Smith Decl. at ¶ 6; Strickland Decl. at ¶ 5.

[4] *See* Cooper Decl. at ¶ 12; Johnson Decl. at ¶ 12; Silas Decl. at ¶ 12; Smith Decl. at ¶ 12; Strickland Decl. at ¶ 11; and D.E. 18, ¶ 11.

locations, and now pays legally-mandated time and one-half overtime compensation to some yard spotters for overtime hours worked. Defendant acknowledges this but claims it is due to a "variety of reasons," including the non-applicability of the Motor Carrier exemption to some drivers as well as paying complete overtime as a "recruitment tool." *See* D.E. 22, p. 3.

Regardless, whether the Motor Carrier exemption is properly applied to Defendant's Yard Spotters is a merits issue reserved for the second stage. *See Nelson v. Sabre Cos., LLC*, 2016 U.S. Dist. LEXIS 195829, at *20 (N.D.N.Y. Sep. 30, 2016) (granting conditional certification and noting that "the Court makes no evaluation of the merits" of, among other things, defendant's Motor Carrier Exemption defense). For purposes of conditional certification, the fact that Defendant uniformly classified its Georgia Yard Spotters as exempt from overtime under one singular exemption and paid them straight time for overtime shows the putative collective here is similarly situated and conditional certification is appropriate. Uniformity of a pay practice, alone, is sufficient and justifies conditional certification in cases involving straight time for overtime. *See e.g.*, *Wellman v. Grand Isle Shipyard, Inc*., 2014 WL 5810529, at *4 (E.D. La. Nov. 7, 2014) ("The alleged 'straight time for overtime' policy constitutes a 'factual nexus which binds the named plaintiffs and the potential class members together.'"); *Xia v. New Yung Wah Carrier LLC,* 2023 WL 130830, at

*7 (E.D.N.Y. Jan. 9, 2023) ("Whether Defendants have a defense to the alleged FLSA violations under the Motor Carrier Exemption is an issue for another day...The Court therefore does not address the issue of whether Plaintiffs were lawfully 'classified as exempt pursuant to a common policy or scheme' at this time but instead accepts that there was a common approach to not paying overtime, which may or may not have been unlawful.")

C.   <u>Plaintiffs and the Putative Class Members Performed Similar Work.</u>

Plaintiffs and other Yard Spotters in Georgia also performed similar work in spotting trucks in over ten (10) different yards in Georgia.[5] Defendant will undoubtedly argue that the Putative Class Members here are not identically situated to Plaintiffs, because they do not have the exact same job duties, work on different projects in different locations, and/or have different skill sets. Such an argument is a red-herring. Of course, Plaintiffs need not prove that every Yard Spotter in Georgia is identical to warrant notice. The bottom line is that each Yard Spotter in Georgia performed similar duties and were similar enough for Defendant to uniformly classify them under the exact same exemption until recently when it began reclassifying these positions.

---

[5] *See* Cooper Decl. at ¶ 2; Johnson Decl. at ¶ 2; Silas Decl. at ¶ 2; Smith Decl. at ¶ 2; Strickland Decl. at ¶ 2.

In the instant case, the Putative Class Members are similarly situated because they all: (1) received straight time for overtime; (2) were required or permitted to work overtime without receiving compensation at the legal rate of pay; (3) were staffed by Defendant to yards in Georgia; and (4) were employees providing spotting duties to the jobs assigned to them by Defendants. Plaintiffs more than meet the lenient standard of showing that notice to the Putative Class is appropriate. Given the weight of the showing made by Plaintiffs, the issuance of immediate Court-approved notice to the Putative Class is appropriate and within this Court's discretion.

## II.    APPLICABLE STANDARDS FOR COLLECTIVE ACTIONS

The FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated. *See* 29 U.S.C. § 216(b). It provides in pertinent part:

> An action to recover the liability [for unpaid overtime] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. ***No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.***

*See id.* (emphasis added). As further set forth below, the initial step to this process is conditional certification and notice to potential class members upon the lenient standard of showing that the class members are similarly situated.  *See Morgan v.*

*Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260-61 (11th Cir. 2008); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007).[6]

In *Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165 (1989), the Supreme Court determined that trial courts have authority to compel defendant-employers to provide names and addresses of potential plaintiffs through the pretrial discovery process, which included sending court-authorized consent forms to potential plaintiffs by implementing 29 U.S.C. §216(b) to facilitate notice to potential plaintiffs. *Id.* at 169-70. This authority arises from the Court's broad discretionary power to manage the process of joining multiple parties in an orderly manner. *Id.* "Trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute." *Id.* at 171. Thus, "it lies within the discretion of the trial court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Id.* "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting

---

[6] FLSA collective actions operate differently than the typical class actions under Rule 23 of the Federal Rules of Civil Procedure. Under 29 U.S.C. § 216(b) of the FLSA, an employee belonging to a similarly situated class of plaintiffs must "opt-in" to the class by filing a written consent with the Court in order to be bound by the outcome of the case. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013); *Anderson*, 488 F.3d 945 fn. 3. Without signing and filing such an express consent, employees are not bound by the outcome of the litigation. *See Symczyk*, 133 S. Ct. at 1530.

cutoff dates to expedite disposition of the action." *Id.* at 172. Additionally, the benefits of the collective action provisions of 29 U.S.C. §216(b) "depend on employees receiving accurate and timely notice concerning the pendency of the collective action so they can make informed decisions about whether to participate." *Id.* at 170.

A. Plaintiffs' Burden is Lenient and District Courts within the Eleventh Circuit Require Only Minimal Evidence to Support Conditional Certification of a Class of Similarly Situated Employees

The FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 28 U.S.C. § 216(b). Because the statute only requires that employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Rule 23, Fed.R.Civ.P. See 28 U.S.C. § 216(b); *Anderson*, 488 F.3d at 953. The Eleventh Circuit Court of Appeals has explained:

> For an opt-in class to be created under section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." "[P]laintiffs need show only 'that their positions are similar, not identical,' to be the positions held by the putative class members."

*Grayson v. K Mart*, 79 F.3d 1086 n. 12 (11th Cir. 1996) (quotations omitted). The FLSA does not define the term "similarly situated." *See* 28 U.S.C. § 216(b). The

Eleventh Circuit has noted that courts should consider whether the employees are similarly situated "with respect to their job requirements and in regards to their pay provisions." *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991). "For an opt-in class to be created under section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees 'similarly situated'" *Grayson*, 79 F.3d at 1096. "[A] unified policy, plan, or scheme . . . may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)." *Id*. at 1095.  Thus, employees are indeed similarly situated when there is a "unified policy, plan, or scheme," but a "unified policy, plan, or scheme," is not a requirement in order for the Court to lawfully conditionally certify a class under § 216(b). *See id.* In *Grayson*, the Eleventh Circuit held that the allegations, affidavits, and depositions that were offered by the Plaintiff were "more than sufficient" to meet the "similarly situated standard found in § 216(b)," therefore indicating that the Court could have conditionally certified the class if it had been presented with a record that had been less dense.  *See id*. at 1095-96.

  B. The Two-Stage Process for Conditional Certification.

  Courts employ a two-phase inquiry to address whether the named plaintiffs are similarly situated to the employees they seek to represent. *Morgan*, 551 F.3d at 1260 ("[w]hile not requiring a rigid process for determining similarity, we have sanctioned

a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase"). "The first step of whether a collective action should be certified is the notice stage. . . . This first step is also referred to as conditional certification since the decision may be reexamined once the case is ready for trial." *Id.* at 1260-61. "The second stage is triggered by an employer's motion for decertification." *Id.* at 1261.

At the first stage, the plaintiff bears the burden of showing that employees in the class are similarly situated. *Id.* at 1260. At that point, certification is only conditional and by no means final. *See Anderson*, 488 F.3d at 952. During the first stage, "[b]ecause the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001). The Court's first determination is "usually based only on the pleadings and any affidavits which have been submitted." *Hipp*, 252 F.3d at 1218. Once the District Court conditionally certifies the class, "putative class members are given notice and the opportunity to opt-in." *Id.* "The action proceeds as a representative

action throughout discovery." *Id*.[7] This case is at Stage I, the "notice stage", and as such, Plaintiff has amply met his burden.

## III.   PLAINTIFFS EASILY EXCEED THE LENIENT BURDEN FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION.

Plaintiffs have established both Eleventh Circuit's requirements for conditional certification. First, Plaintiffs have presented sufficient evidence demonstrating that he and the other Yard Spotters in Georgia are similarly situated regarding their work and compensation. *Reese v. Fla. BC Holdings, LLC*, 2018 WL 1863833, at *4 (M.D. Fla. Mar. 16, 2018) (Kelly, *M.J.*). Second, Plaintiffs have also demonstrated that there are others who would join this action if they were to receive court approved notice. *Id*.

A.   <u>Plaintiffs and the Other Yard Spotters are Similarly Situated Regarding their Work and Compensation.</u>

The overwhelming evidence establishes that Plaintiffs and the other Yard Spotters performed the same type of work providing spotting duties to Defendant's

---

[7] "The second stage is triggered by an employer's motion for decertification." *Morgan*, 551 F.3d at 1261. Due to the fact that the majority of discovery has taken place at the second stage "the district court has a much thicker record than it had at the notice stage and can therefore make a more informed factual determination of similarity." *Morgan*, 551 F.3d at 1261. As such, the "second stage is less lenient, and the plaintiff bears a heavier burden." *Id*.

clients at their yards in Georgia.[8] Likewise, each Yard Spotter was paid straight time for overtime hours worked at one point during their employment with Defendant.[9]

**B.**  Plaintiffs and the Other Yard Spotters are Similarly Situated Because All Were Subject to a Common Policy.

Here, all Yard Spotters in Georgia in the defined collective were subject to Defendant's policy of paying straight time for overtime hours worked. *See id.* Plaintiffs allege these practices violate the FLSA (even though as discussed below the merits of the claim are not a factor in the conditional certification analysis). FLSA cases involving straight time for overtime pay allegations are generally uniform in nature and typically conditionally certified by district courts throughout the country. *See, e.g., Wellman v. Grand Isle Shipyard, Inc.*, 2014 WL 5810529, at *4 (E.D. La. Nov. 7, 2014) ("The alleged 'straight time for overtime' policy constitutes a 'factual nexus which binds the named plaintiffs and the potential class members together.'").[10]

---

[8] *See* Cooper Decl. at ¶ 3; Johnson Decl. at ¶ 3; Silas Decl. at ¶ 3; Smith Decl. at ¶ 3; Strickland Decl. at ¶ 3.

[9] *See* Cooper Decl. at ¶ 12; Johnson Decl. at ¶ 12; Silas Decl. at ¶ 12; Smith Decl. at ¶ 12; Strickland Decl. at ¶ 11; D.E. 18, ¶ 11.

[10] *See also Klapatch v. BHI Energy I Power Servs., Inc.*, 2019 WL 859044, at *1 (D. Mass. Feb. 22, 2019) (conditionally certifying class of straight time for overtime workers regardless of job title or job duties and rejecting employer's argument that the court need engage in an individual analysis of job duties as premature at the notice stage); *Heeg v. Adams Harris, Inc.*, 907 F. Supp.2d 856, 863 (S.D. Tex. 2012) (conditionally certifying class of workers paid "straight time for overtime"); and

Likewise, courts frequently grant conditional certification in cases involving alleged Motor Carrier exemptions are often conditionally certified under the FLSA.[11] Even at the second, more stringent decertification stage, courts often reject decertification arguments from employers based on the Motor Carrier exemption and FLSA exemptions in general, even if alleged factual differences exist.[12]

Here, the "straight time for overtime" plan, based on Defendant's uniform classification of all Yard Spotters as exempt under the MCA, is the "policy alleged to violate the FLSA" in this FLSA collective action. Plaintiffs here have made the requisite showing to demonstrate that they and the other Yard Spotters in Georgia

---

*Gomez v. Loomis Armored US, LLC*, 2017 WL 2999422, at *5-6 (W.D. Tex. April 3, 2017)(certifying class of armored guards paid straight-time for overtime).

[11] *Albanil v. Coast 2 Coast, Inc.*, 2008 WL 4937565 (S.D. Tex. Nov. 17, 2008) (conditionally certifying class and rejecting Defendant's arguments against certification based on the Motor Carrier Act); *Rodney v. Casella Waste Sys., Inc.*, 2023 WL 313929 (D. Vt. Jan. 19, 2023) (conditionally certifying class of disposal drivers and rejecting arguments against certification based on the Motor Carrier Act); *Ramos v. Capitan Corp.*, 2016 WL 8674617 (W.D. Tex. May 18, 2016) (conditionally certifying class of engineers while rejecting arguments against certification based on the Motor Carrier Act).

[12] *See, e.g., Morgan*, 551 F.3d at 1263-64 (rejecting employer's argument on decertification that FLSA exemption must be applied individually to over 1,400 store managers); *Neff v. Flowers Foods, Inc.*, 2019 WL 10750005, at *9 (D. Vt. May 16, 2019) (rejecting employer's argument that motor carrier act defense will have to be applied individually at decertification stage); *Albelo v. Epic Landscape Prods., L.C.*, 2021 WL 2213305, at *2 (W.D. Mo. June 1, 2021); *Collinge v. IntelliQuick Delivery, Inc.*, 2015 WL 1292444, at *9 (D. Ariz. Mar. 23, 2015); and *Wilkinson v. High Plains Inc.*, 297 F. Supp. 3d 988, 998 (D.N.D. 2018).

were victims of a common policy or plan alleged to violate the law. The pleadings and declarations attached to this Motion demonstrate Plaintiffs and Georgia Yard Spotters were all paid straight time for overtime by Defendant and did not receive overtime despite regularly working more than 40 hours a week. This evidence is more than sufficient to meet Plaintiffs' modest factual burden at the initial stage of conditional certification.

C. <u>Plaintiffs Have Demonstrated the Requisite Interest.</u>

Plaintiffs have also met their burden to show that others will join this putative collective action. In determining whether to grant conditional certification, courts in Georgia and across the nation do not require a high number of opt-in plaintiffs to have already joined the case to satisfy the conditional certification standard. *See Saenz v. Old Dominion Freight Line, Inc.,* 2019 WL 6622840, at *4 (N.D. Ga. June 7, 2019) ("Although the number of opt-ins is relatively low, the Court finds that, at this stage, [Plaintiff] has met his burden to demonstrate that other employees wish to join. There is no numeric or percentage threshold at conditional certification."); citing *Jewell v. Aaron's, Inc.*, 2012 WL 2477039, at *8 (N.D. Ga. June 28, 2012) (Totenberg, J.) (conditionally certifying class despite argument that plaintiffs only represented .05% of the putative class). Here, seven (7) individuals have already

joined the case prior to receipt of court-approved notice. This showing supports conditional certification of a company-wide class as proposed above.[13]

For example, in *Barreda*, the plaintiffs alleged company-wide violations and sought conditional certification based on affidavits from only one location. *Barreda,* 2008 WL 7431307 at *1. There, the Court held that the plaintiffs had presented sufficient evidence of a policy that affected the entire putative class. *See id.* at *2. In granting conditional certification the court stated that "[t]he fact that the only affidavits submitted in support of this finding come from O'Hare employees does not diminish the nationwide applicability of the offending policy." *Id.* at *2. Here, there is no question that Defendant's uniform pay practice was applied to all Yard Spotters in the defined class. Plaintiff has presented sworn declarations from seven

---

[13] *See, e.g., Mason v. Atlanta Beverage Co.,* 2018 WL 3655374, at *6 (N.D. Ga. Aug. 2, 2018) (granting conditional certification based on consents and declarations of named plaintiff and two opt-ins); *Olmstead v. RDJE, Inc.,* 2017 WL 3769331, at *5 (N.D. Ga. Aug. 31, 2017) (conditional certification granted based on existence of named plaintiff and consents to join of 4 opt-ins); *Stevenson v. Great Am. Dream, Inc.,* 2013 WL 4217128, at *2 (N.D. Ga. Aug. 14, 2013) (a single opt-in demonstrated the requisite interest); *Riddle v. Suntrust Bank,* 2009 WL 3148768, at *3 (N.D. Ga. Sept. 29, 2009) (approving nationwide conditional certification based on existence of three opt-in plaintiffs); *Isaacs v. One Touch Direct, LLC,* 2015 WL 248658 (M.D. Fla. Jan. 20, 2015) (Granting conditional certification based on declaration of Plaintiff and two opt-in Plaintiffs.); and *Barreda v. Prospect Airport Services, Inc.*, 2008 WL 7431307 (N.D. Ill. 2008) (certifying **company-wide** collective action based on affidavits from only **one** location).

Yard Spotters that worked collectively in over 10 different locations.[14] This evidence is sufficient to demonstrate the existence of a company policy for purposes of conditional certification. Plaintiffs clearly satisfy the lenient evidentiary burden establishing that other Yard Spotters in Georgia similarly situated to Plaintiffs exist, and conditional certification and notice to these individuals is warranted.

## IV.   FACTORS IRRELEVANT TO THE COURT'S CONSIDERATION

### A.   The "Merits" of Plaintiffs' Claims Are Not Considered When Determining Whether to Grant Notice.

One of Defendant's defenses will likely be based upon some contention that their straight time for overtime pay was legal and that Plaintiffs and other Yard Spotters in Georgia are in fact exempt under the FLSA. However, courts do not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be "similarly situated." *See Jewell*, 2012 WL 2477039, *3 ("The focus of the court's inquiry at this stage is not on whether there has been an actual violation of law, but on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated.") (citing *Kreher v. City of Atlanta, Georgia*, 2006 WL 739572, at *4 (N.D. Ga. March 20, 2006)).

### B.   Courts Do Not Consider the Need For Discovery During Stage I and Do Not Weigh Factual Disputes.

---

[14] *See* Cooper Decl. at ¶ 2; Johnson Decl. at ¶ 2; Silas Decl. at ¶ 2; Smith Decl. at ¶ 2; Strickland Decl. at ¶ 2; and D.E. 18, ¶ 2.

16

Likewise, courts have consistently recognized that discovery at the first notice stage is unnecessary for the similarly situated determination. *See Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D. 364, 367 (D.S.C. 2012) (During the first stage for conditional certification the "Court must examine the pleadings and affidavits in order to determine whether the plaintiffs are similarly situated.); *Lloredo v. Radioshack Corp.*, 2005 WL 1156030, at *1 (S.D. Fla. May 12, 2005) (refusing to examine discovery in making its first stage similarly situated determination); *Harrison v. Enterprise Rent-A-Car Co*., 1998 WL 422169, at *13 (M.D. Fla. July 1, 1998) (holding that the fact that subsequent discovery may prove the original plaintiffs and the opt-in plaintiffs are not after all "similarly situated" does not defeat conditional class certification); *Schwed v. Gen. Elec. Co.,* 159 F.R.D 373, 375 (N.D.N.Y. 1995) ("Even where later discovery proves the putative class members to be dissimilarly situated, notice . . . prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA]").

Moreover, discovery is not necessary because courts at this stage do not resolve factual disputes or make credibility determinations.[15] *See Russell v. Life Win,*

---

[15] Should Defendants attempt to use them, courts in this Circuit reject the use of counter-affidavits (aka "happy camper" declarations). *Palma v. MetroPCS Wireless, Inc.*, 2013 WL 6597079, *4 (M.D. Fla. Dec. 16, 2013) (defendant "inundated the Court with a barrage of competing declarations . . . However, [this] evidence exceeds

*Inc.,* 2014 WL 7877787, at *2 (M.D. Fla. Apr. 23, 2014) ("courts at this stage do not resolve factual disputes or make credibility determinations.").[16]

Additionally, courts have held that any individualized defenses like Defendant will raise here are **not** considered at the Stage I analysis, but are considered only at the Stage II decertification stage.[17] Moreover, Defendant's anticipated argument that

---

by far this Court's limited inquiry at the notice stage of the conditional certification process."); and *Simpkins v. Pulte Home Corp.*, 2008 WL 3927275, *5 (M.D. Fla. Aug. 21, 2008) (court indicated that "more is not necessarily better, and the evidence Pulte presents goes far beyond the scope of this Court's review at the first stage of the certification process.").

[16] *See also Reyes v. AT & T Corp.*, 801 F. Supp. 2d 1350, 1358 (S.D. Fla. 2011) ("Defendant's attempt . . . to seek a factual determination on the similarly situated question by presenting a vast amount of affidavit evidence 'demonstrate[s] a fundamental misunderstanding of the nature of the proceedings at this stage of the litigation.'"); and *Robinson*, 2011 WL 6667338 at *4 ("[T]he defendant, effectively, urges the undersigned to find that the plaintiffs and putative plaintiffs are not victims of a plan or policy to deny them overtime pay, but are instead the victims of *ad hoc* decision-making by low- or mid-level managers; this would require the Court to make a factual determination – without allowing the plaintiffs the benefits of undertaking their own discovery.  The Court, however, declines to resolve factual issues or make credibility determinations at this stage.").

[17] *See Simpkins,* 2008 WL 3927275, at *5 ("individual factual analysis is saved for the second stage of certification."); *Tanner v. TPUSA, Inc.*, 2014 WL 692916, *4 (M.D. Ga. Feb. 20, 2014) ("Likewise, the availability of individual defenses to individual plaintiffs is better left to decertification."); *Vondriska v. Premier Mortg. Funding, Inc.*, 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007) ("Variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at the notice stage."). But in evaluating conditional certification, while "[t]here is need for care in evaluating distinctions among employees, … those distinctions must make a difference relevant to the legal issues presented." *Roussell v. Brinker Intern., Inc.*, 441 Fed.Appx. 222, 226-27 (5th Cir. 2011).

no two workers are alike and the Court must undertake an individualized, person-by-person analysis to resolve the case – is undermined by the fact that Defendant classified a distinct group of workers as exempt employees and paid them straight time for overtime in one fell swoop, without examining each individual's job duties or other employment provisions.[18] Even after Defendant began reclassifying some Georgia Yard Spotters as non-exempt over the last year, no evidence exists to suggest they did so on an individual by individual basis, but only on a <u>location by location</u> basis, making collective treatment extremely manageable.

Through the allegations in the Complaint, and the declarations and evidence that have been attached to this motion, Plaintiffs have provided sufficient evidence to warrant notice of this lawsuit be sent to all other Yard Spotters in the defined class. Because the "similarly situated" determination at the notice stage is preliminary, Defendant will not be prejudiced by the facilitation of notice because they can later argue that Plaintiffs, opt-in Plaintiffs, and the Putative Class Members are not in fact "similarly situated" enough to proceed collectively to trial once discovery is complete.

---

[18] *See also Nerland v. Caribou Coffee Co., Inc.*, 564 F.Supp.2d 1010, 1024 (D. Minn. 2007) ("The Court finds it disingenuous for [defendant], on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming the plaintiffs cannot proceed collectively to challenge the exemption.").

## V.   PLAINTIFFS' NOTICE IS ACCURATE AND SHOULD BE TEXTED AND E-MAILED AS WELL AS MAILED.

Plaintiffs' proposed judicial notice is "timely, accurate, and informative." *See Hoffmann-La Roche,* 493 U.S. at 172. As such, the proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action and should be adopted. To that end, Plaintiffs request they be permitted to e-mail the Class Notice, Exhibit A, to all Yard Spotters within the defined class, in addition to mailing same via first-class mail.  E-mail notice serves to further the broad remedial purpose of the FLSA and has been widely adopted by federal courts throughout the country. *See, e.g., Kraft v. Freight Handlers, Inc.,* 2019 WL 3854989, *6 (M.D. Fla. May 21, 2019).[19]

Plaintiffs also request that this Court allow notice to be sent via text message. *See Landry v. Swire Oilfield Servs., L.L.C.,* 252 F. Supp. 3d 1079, 1129 (D.N.M.

---

[19] *See also Lewis v. Huntington Nat. Bank*, 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011) ("The addresses on file for [former employees] may or may not continue to be accurate, and using a second mode of communication will help ensure that all of these potential plaintiffs will receive at least one copy of the Notice Package."); *Butler v. Direct SAT USA, LLC*, 876 F. Supp.2d 560, 575 (D. Md. 2012) (allowing e-mail notice to putative class members because communication through e-mail is now the "norm."); *Denney v. Lester's, LLC*, 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012) ("[T]he Court finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail, and postings in Defendants' break rooms."); and *In re Deloitte & Touche, LLP Overtime Litig.,* 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012)(noting that "communication through email is [now] the norm.").

2017) ("The Court finds persuasive the [p]laintiffs' argument that communication via email and text message will 'increase the chance of the class members receiving and reading the notice. . .'"). Additionally, "given the amount of junk mail that people receive, email and text message likely are more effective methods for communicating with potential class members than traditional first-class mail." *Landry*, 252 F. Supp. 3d at 1130; *see also Irine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("[T]ext messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone serving as the most consistent and reliable method of communication").[20] This Court has also previously allowed notice to be sent via e-mail and text message. *See Campo v. Granite Services international, Inc.*, 584 F.Supp.3d 1337, 1350-51 (N.D. Ga. 2022). Allowing notice by text message and e-mail will achieve the broad remedial purposes of the FLSA to ensure the highest number of class members receive a form of the Notice and be given a chance to join.

A. **A Sixty-Day Notice Period is Appropriate.**

---

[20] *See also Regan v. City of Hanahan*, 2017 WL 1386334, at *3 (D.S.C. Apr. 18, 2017) ("text messaging is reasonable because, in today's mobile society, individuals are likely to retain their mobile numbers and email addresses even when they move"); *Vega v. Point Security, LLC*, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017) ("[I]n the world of 2017, email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus that [sic] using email and texts to notify potential class members is entirely appropriate.").

Notice periods may vary, however, courts have routinely held that a sixty (60) to ninety (90) day notice period is appropriate in FLSA cases. *See, e.g., Fiore v. Goodyear Tire & Rubber Co*., 2011 WL 867043, at *4 (M.D. Fla. March 10, 2011) (setting notice period at 90 days); *Ballew v. Lennar Corp.,* 2008 WL 4218137, at *1 (M.D. Fla. Sept. 11, 2008) ("The Court further finds the 90 day period to be reasonable…"); *Abdul-Rasheed v. KableLink Comm*., *LLC*, 2013 WL 5954785, *5 (M.D. Fla. Nov. 7, 2013) (approving sixty day notice period).

## VI.     NOTICE SHOULD BE GIVEN WITHIN A THREE-YEAR STATUTE OF LIMITATIONS PERIOD.

Notice within a three-year statute of limitations period is appropriate in this case. The FLSA allows a Plaintiff to collect damages within a three-year statute of limitations if it can be shown that a Defendant's violation of the FLSA was "willful." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Whether Defendant's violations of the FLSA were willful is an issue going to the merits of the case, and not whether notice should be issued to potential claimants. *Abdul-Rasheed*, 2013 WL 5954785 at *5; *Harris v. Performance Transp., LLC*, 2015 WL 1257404, *4 (M.D. Fla, March 18, 2015). The facts concerning willfulness must be elicited during discovery, and Defendant may challenge the three-year statute of limitations again at an appropriate time.

## VI. CLASS MEMBERS SHOULD BE ALLOWED TO ELECTRONICALLY EXECUTE THEIR CONSENT FORMS.

Federal Courts throughout the United States "recogniz[e] that 'we live in a time when all manner of commercial transactions are routinely cemented by electronic submission'" and "courts have approved the use of online, electronic signature opt-in forms." *Landry*, 252 F. Supp. 3d at 1130 (quoting *Mraz v. Aetna Life Ins. Co.*, 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014); *White v. Integrated Elec. Techs., Inc.,* 2013 WL 2903070, at *9 (E.D. La. June 13, 2013) (granting Plaintiffs' request to allow class members to execute electronic consent forms); *Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *8 (N.D. Tex. Nov. 29, 2012), report and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) (allowing class members to be given the option to execute their consent forms online via electronic signature service). At the federal level, the Electronic Signatures in Global and National Commerce Act, effective since 2000, "facilitate[s] the use of electronic records and signatures in interstate or foreign commerce." 15 U.S.C. § 7001, *et seq*. Therefore, class members should have the option to sign their consent to join forms electronically. Giving class members this option is in line with the FLSA's remedial purposes and would ensure that class members have the ability to submit their consent forms without additional obstacles standing in their way.

## VII. LIMITED DISCOVERY OF NAMES AND CONTACT INFORMATION OF THE PUTATIVE CLASS IS NECESSARY TO CARRY OUT NOTICE.

The opt-in provision of the FLSA requires some procedure for identifying and notifying potential class members. *Morden v. T-Mobile USA, Inc.,* 2006 WL 1727987, at *3 (W.D. Wash. June 22, 2006) (compelling the defendant to produce the names and addresses of potentially similarly situated employees). "The first step is to identify those employees who may be similarly situated and who may therefore ultimately seek to opt into the action." *Id.* As such, early discovery of a mailing list is routinely disclosed in FLSA collective actions because the lists are necessary to facilitate notice. *See, e.g., Hoffmann-La Roche,* 493 U.S. at 165; *see also Reese,* 2018 WL 1863833, at *6; *Randle v. Allconnect, Inc.*, 2014 WL 1795184 (N.D. Ga. May 6, 2014) ("Plaintiff moves to require Defendant to produce information about potential class members, including their full names, last-known addresses, email addresses, dates of employment and dates of birth. This information is within Defendant's possession, its production to Plaintiff will facilitate issuance of the notice, and it is required to be produced by Defendant."). Thus, the Court should order Defendant to provide Plaintiffs with a list of all putative class members' names, addresses, phone numbers, and e-mail addresses to carry out notice.

WHEREFORE, for the reasons set forth above, Plaintiffs, Cornelius Johnson and James Strickland, individually, and on behalf of all others similarly situated, respectfully request this Court issue an Order:

(i)     conditionally certifying a class of "all hourly paid yard spotter employees who worked for Defendant in the state of Georgia in the past three years and who were paid 'straight time for overtime' for all overtime hours worked at any time in that three-year period";

(ii)    directing Defendant to produce to undersigned counsel within fourteen (14) days of the Order granting this Motion a list containing the names, the last known addresses, phone numbers, and e-mail addresses of putative class members within the defined class ("Class List");

(iii)   authorizing undersigned counsel to send notice, in the form attached hereto as Exhibit A, to all individuals on the Class List by first-class mail, e-mail, and text-message;

(iv)    providing all individuals on the Class List with sixty (60) days from the date the notices are initially mailed to file a Consent to Become Opt-In Plaintiff, in the form attached hereto as Exhibit B; and

(v)     any other relief that is just and appropriate.

Respectfully submitted this 26th day of April 2023.

Respectfully submitted,

By: */s/ C. Ryan Morgan*
    **C. Ryan Morgan**
    GA Bar No. 711884
    Morgan & Morgan, P.A.
    20 N. Orange Ave., 16th Floor
    P.O. Box 4979
    T: (407) 420-1414
    F: (407) 867-4791
    E: rmorgan@forthepeople.com

    **AND**

    **Andrew R. Frisch**
    GA Bar No. 366105
    Morgan & Morgan, P.A.
    8581 Peters Road, Suite 4000
    Plantation, FL 33324
    T: (954) WORKERS
    F: (954) 327-3013
    E: afrisch@forthepeople.com

    **AND**

    Carlos V. Leach, Esq.
    GA Bar No. 488443
    Adeash Lakraj, Esq.
    GA Bar No. 444848
    THE LEACH FIRM, P.A.
    631 S. Orlando Avenue, Suite 300
    Winter Park, Florida 32789
    T: (407) 574-4999
    F: (833) 423-5864
    E: alakraj@theleachfirm.com
    E: cleach@theleachfirm.com
    E: yhernandez@theleachfirm.com

*ATTORNEYS FOR PLAINTIFF*

## CERTIFICATE OF FONT SIZE

Pursuant to Local Rule 7.1(D), Plaintiff certifies that this brief was prepared with Times New Roman, 14-point font as allowed by Local Rule 5.1(c).

*/s/ C. Ryan Morgan*
**C. Ryan Morgan**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on this the 26th day of April 2023.

*/s/ C. Ryan Morgan*
**C. Ryan Morgan**